# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

JUN 1 0 2011

STACEY ALBERT MILLER, )
)
    Petitioner, )
)
v. )    Civil Action No. 3:10CV646–HEH
)
GENE M. JOHNSON, )
)
    Respondent. )

## MEMORANDUM OPINION
### (Granting Motion to Dismiss 28 U.S.C. § 2254 Petition)

On September 14, 2010, Stacey Albert Miller ("Miller"), a former Virginia inmate proceeding *pro se* and *in forma pauperis*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter is presently before the Court on Respondent's Motion to Dismiss. For the reasons stated below, Respondent's Motion will be granted.

## I. PROCEDURAL HISTORY

Following a jury trial in the Circuit Court for the City of Richmond ("the Circuit Court") in January 2007, Miller was convicted of felony dog fighting, twelve counts of misdemeanor animal cruelty, two counts of possession of a controlled substance, and two counts of felony animal cruelty. (Br. Supp. Mot. Dismiss Ex. 1, at 1.) The Circuit Court sentenced Miller to four years imprisonment. (*Id.* at 2.)

## A.    Direct Appeal

Miller appealed to the Court of Appeals of Virginia. (Br. Supp. Mot. Dismiss Ex. 2.) In his appeal, Miller asserted that the Circuit Court erred by (1) denying Miller's motion to suppress evidence (*id.* at 20–23), (2) denying three of Miller's proposed jury instructions (*id.* at 24–26), and (3) denying Miller's motion to strike the charges of animal cruelty and dog fighting because the Commonwealth's evidence was insufficient to convict beyond a reasonable doubt (*id.* at 27–30). On July 9, 2008, the Court of Appeals of Virginia affirmed Miller's convictions on the merits. (Br. Supp. Mot. Dismiss Ex. 3). Subsequently, a three-judge panel denied Miller's petition for appeal. (Br. Supp. Mot. Dismiss Ex. 4).

On November 25, 2008, Miller filed a petition for appeal in the Supreme Court of Virginia. (Br. Supp. Mot. Dismiss Ex. 8.) Miller raised the same three issues he raised before the Court of Appeals of Virginia. The Supreme Court of Virginia summarily refused the appeal on May 14, 2009. (Br. Supp. Mot. Dismiss Ex. 5).

## B.    Petition for a Writ of Habeas Corpus

On February 23, 2010, Miller filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. (Br. Supp. Mot. Dismiss Ex. 6.) Miller raised four grounds for relief in his petition:

Claim One:    Miller received ineffective assistance of counsel when his attorney failed to call police officers as witnesses;

Claim Two: Miller received ineffective assistance of counsel when his attorney failed to call an expert witness in dogfighting;

Claim Three: Miller received ineffective assistance of counsel when his attorney waived Miller's rights regarding the seizure of his animals; and

Claim Four: Miller received ineffective assistance of counsel when his appellate attorney failed to argue on appeal that the search warrant was improperly executed after sunset.

The Supreme Court of Virginia dismissed Miller's petition on July 19, 2010. (Br. Supp. Mot. Dismiss Ex. 7). The Supreme Court of Virginia dismissed Claims One, Two, and Four on the merits because they did not satisfy either of the two prongs set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court held that Claim Three was not cognizable in a petition for writ of habeas corpus because a judicial determination in Miller's favor would not affect the lawfulness or duration of Miller's conviction or sentence.

On September 14, 2010, this Court received Miller's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Miller raises six grounds for relief:

Claim 1: Miller received ineffective assistance of counsel when his trial attorney (a) failed to call police officers as witnesses, (b) failed to call an expert witness on dog fighting, and (c) waived Miller's rights regarding the seizure of his animals;

Claim 2: Miller received ineffective assistance of counsel when his appellate attorney failed to argue on appeal that the search warrant was improperly executed after sunset;

Claim 3: The trial court erred when it denied Miller's motion to suppress evidence seized after an allegedly unlawful arrest;

Claim 4:     Miller's Fourth Amendment[1] rights were violated when (a) officers entered Miller's home to arrest him without Miller's consent (§ 2254 Pet. 39), and (b) animal control officers failed to secure a search warrant (§ 2254 Pet. 46);

Claim 5:     The trial court erred when it denied three of Miller's proposed jury instructions. Miller requested the Circuit Court to instruct on (a) the elements of a lesser included offense, (b) definitions of terms found in the alleged lesser included statute, and (c) definitions of the terms "knowingly" and "willingly"; and

Claim 6:     The trial court erred when it denied Miller's motion to strike on the basis of insufficiency of the evidence.

Respondent filed the instant motion to dismiss, asserting that Claims 3, 4(b), and 5(c) are procedurally defaulted, and Claims 1, 2, 4(a), 5(a), 5(b), and 6 should be dismissed on the merits.

## II. ANALYSIS

### A.   A Habeas Corpus Petition Must Challenge Custody

In Claim 1(c), Miller asserts that he received ineffective assistance when his trial attorney failed to advise Miller on the effects of a waiver of the procedures for the seizure and dispositions of animals pursuant to Virginia Code Section 3.1-796.115(A) and (B). Miller asserts that he never received notice of the hearing regarding the seizure and

---

[1] The Fourth Amendment to the United States Constitution reads:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

impoundment of the dogs, and was never advised of the results of the hearing. Miller insists that, had his attorney properly advised him, Miller could have saved more than $20,000.

This claim is not cognizable in a petition for writ of habeas corpus. Petitions for writs of habeas corpus must contend that the petitioner is "in custody" in violation of the Constitution or other federal laws. *Bailey v. Hill*, 599 F.3d 976, 978–79, 982 (9th Cir. 2010); *United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999). A petition for a writ of habeas corpus must "attack the legality of the defendant's prison sentence or seek his release from custody." *Kramer*, 195 F.3d at 1130. Claim 1(c) does not *"claim the right to be released* from custody." *Id.* at 1129 (emphasis in original). Accordingly, Claim 1(c) will be dismissed.

## B. Exhaustion and Procedural Default

The requirement that defendants convicted in state court exhaust their state-court remedies as a prerequisite to federal habeas review "'is rooted in considerations of federal-state comity,'" and in Congress's determination"that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n.10 (1973)). The purpose of requiring exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted).

Exhaustion has two aspects. First, a petitioner must utilize "all available state remedies before he can apply for federal habeas relief." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (citing *Matthews v. Evatt*, 105 F.3d 907, 910–11 (4th Cir. 1997)). The federal habeas statute provides that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)). Fair presentation demands that "'both the operative facts and the controlling legal principles must be presented to the state court.'" *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (quoting *Matthews*, 105 F.3d at 911). Thus, "the presentation to the state court of a state law claim that is similar to a federal claim does not exhaust the federal claim." *Id.* (citing *Duncan*, 513 U.S. at 366); *see Gray v. Netherland*, 99 F.3d 158, 162–64 (4th Cir. 1996) (concluding petitioner had not fairly presented his legal argument to the state courts). "The burden of proving that a claim has

6

been exhausted lies with the petitioner." *Matthews*, 105 F.3d at 911 (citing *Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994)).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard*, 134 F.3d at 619. This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). Procedural default also occurs where the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n.1).[2] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010). Absent a showing of cause and prejudice or a fundamental

---

[2] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Matthews*, 105 F.3d at 911 (citing *Sweezy v. Garrison*, 694 F.2d 331, 331 (4th Cir. 1982)).

miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

In this case, Miller never fairly presented Claims 3, 4(b), and 5(c)[3] to the Supreme Court of Virginia. If he were to attempt to do so now, the state court would bar him from doing so pursuant to Virginia Code Section 8.01-654(B)(2). That statute provides that a petition for a writ of habeas corpus will not "be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code Ann. § 8.01-654(B)(2) (West 2010). All of the facts necessary to raise these claims were available to Miller at the time he filed his state habeas petition. Thus, these claims are procedurally defaulted. Miller does not offer cause for the default or suggest that a miscarriage of justice will occur if this Court does not address the claims on the merits. Accordingly, Claims 3, 4(b), and 5(c) will be dismissed.

## C. Claims Dismissed on the Merits by the State Court

Claims 1, 2, 4(a), 5(a), 5(b), and 6 were presented to the Supreme Court of Virginia either in Miller's habeas proceedings or on direct appeal. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, this Court's

---

[3] In Miller's petition for appeal to the Court of Appeals of Virginia, he stated in his "Questions Presented" that the trial court erred in denying three jury instructions. (Br. Supp. Mot. Dismiss Ex. 2, at 2.) However, Miller only provided argument in his petition regarding two of those instructions. (Br. Supp. Mot. Dismiss Ex. 2, at 24–26.) Accordingly, the Court of Appeals of Virginia determined that Miller had waived the challenge to the jury instruction defining the terms knowingly and willingly. (Br. Supp. Mot. Dismiss Ex. 3, at 5–6.) Miller's petition for appeal to the Supreme Court of Virginia did not challenge this finding. (*See* Br. Supp. Mot. Dismiss Ex. 8, at 25–28.)

authority to grant relief by way of a writ of habeas corpus is circumscribed by 28 U.S.C. § 2254(d) and § 2254(e)(1). Under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The state court's "factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

### 1.    Claim 6: Sufficiency of the Evidence

In Claim 6, Miller contends that the trial court erred by denying his motion to strike the charges of animal cruelty and dog fighting on the basis of insufficiency of the evidence. Miller raised this claim on direct appeal to the Court of Appeals of Virginia and the Supreme Court of Virginia.

A federal habeas petitioner is entitled to relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 329 (1979); *Greene v. Johnson*, No. 3:10cv53, 2010 WL 5395057, at *6 (E.D. Va. Dec. 28, 2010). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 334. The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318.

### a. Animal Cruelty

Miller was convicted of twelve counts of misdemeanor animal cruelty. The statute under which he was prosecuted states in pertinent part that "[a]ny person who . . . deprives any animal of necessary food, drink, shelter or emergency veterinary treatment . . . shall be guilty of a Class 1 misdemeanor." Va. Code Ann. § 3.1-796.122(A) (West 2006). Furthermore, Miller was convicted of two counts of felony animal cruelty, which punishes:

> Any person who (i) . . . willfully inflicts inhumane injury or pain not connected with bona fide scientific or medical experimentation or cruelly and unnecessarily beats, maims or mutilates any dog or cat that is a companion animal whether belonging to him or another and (ii) as a direct result causes the death of such dog or cat that is a companion animal, or the euthanasia of such animal on the recommendation of a licensed veterinarian upon

determination that such euthanasia was necessary due to the condition of the animal . . . .

Va. Code Ann. § 3.1-796.122(H) (West 2006).

The Court of Appeals of Virginia recounted the evidence against Miller on the charges of animal cruelty:

> [T]he evidence proved that on February 10, 2006, after securing a search warrant, [Animal Control Officer] Merrick returned to [Miller's] residence. [Merrick] testified he saw dogs living in pens with packed feces and urine, no water, no food, and suffering from hair loss, multiple wounds, and other injuries. Two dogs had visible bleeding wounds, and a third had a skin irritation and an infected eye. Merrick discovered a dead dog in a trash can behind appellant's residence. Water bowls that weren't empty were filled with muddy, murky water also containing feces or urine.
>
> . . . .
>
> Mark Kumph, an expert in dogfighting and animal cruelty, testified the injuries the dogs exhibited were consistent with dogfighting. . . .
>
> Veterinarian Dr. Jerry L. Bayer examined two of the seized dogs and after assessing their conditions, recommended they both be euthanized. Both dogs suffered from Parvo and mange, both treatable illnesses that had not been addressed. Both dogs were so malnourished their legs had curved, and both were so ill that they had little chance of survival.
>
> Veterinarian Dr. Alice Ulrichs examined all fifteen dogs and reported all the dogs exhibited various injuries, scars, infections, and other ailments. She opined the dogs' conditions were treatable and most improved once they were provided clean living conditions and adequate nourishment. Many of the dogs exhibited scars or wounds consistent with dog bites.

(Br. Supp. Mot. Dismiss Ex. 3, at 6–7.)[4]

---

[4] Because Miller has not rebutted these factual findings by clear and convincing evidence, the Court presumes that they are correct. *Gray*, 529 F.3d at 228 (citing 28 U.S.C. § 2254(e)(1)).

### b.    Dog Fighting

Miller was convicted of one count of dog fighting.  The statute under which he

was prosecuted states in pertinent part:

A.    No person shall knowingly do any of the following:

> 1. Promote, engage in, or be employed in the fighting of dogs for amusement, sport or gain;

> 2. Wager money or anything of value on the result of such fighting;

> 3. Receive money or anything of value for the admission of another person to a place for dogfighting; [or]

> 4. Possess, own, train, transport, or sell any dog with the intent that such dog engage in an exhibition of fighting with another dog.

Va. Code Ann. § 3.1-796.124(A) (West 2006).  The Court of Appeals of Virginia

recounted the evidence against Miller on the charges of animal cruelty:

> The police also recovered from [Miller's] residence, treadmills, tools, boards, skate wheels, kennels, bite break sticks, and other paraphernalia. [Miller] possessed dogfighting manuals and videos.  He had steroids in the house along with skin staplers and I.V. bags.

> [Miller's] witness, Paula Czech Thomas, an expert in training and caring of pit bull dogs, admitted on cross-examination that many of the items found in [Miller's] residence would not be used for the purpose of showing dogs. Mark Kumph, an expert in dogfighting and animal cruelty, testified the injuries the dogs exhibited were consistent with dogfighting.  He further opined that the presence of steroids, supplements, conditioning manuals, the I.V. bags, and other medical supplies were all consistent with dogfighting.

(Br. Supp. Mot. Dismiss Ex. 3, at 6–7.)

### c. Analysis

The Court of Appeals of Virginia concluded that the "evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that [Miller] was guilty of twelve counts of misdemeanor animal cruelty, two counts of felony animal cruelty, and one count of dogfighting." (*Id.* at 8.)

Miller does not suggest that this finding "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Thus, the Court must determine whether this finding resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2)

Miller argues that "the jury convicted [him] of [animal cruelty] where there was absolutely no evidence presented to the trial court that the defendant deprived any of the dogs of necessary food, drink, shelter or emergency veterinary treatment."[5] (§ 2254 Pet. 64–65.) Miller also argues that "the Commonwealth presented no evidence, not even a scintilla of evidence, that the defendant was engaged in dogfighting, that he promoted dogfighting, or that he possessed and trained dogs for the purpose of dogfighting." (§ 2254 Pet. 67.)

The evidence at trial established that Richmond Animal Care and Control Officer Merrick received a report regarding a dead dog on Miller's property. (Jan. 9, 2007 Tr.

---

[5] The Court notes that Miller concedes the sufficiency of the evidence elsewhere in his § 2254 petition. (§ 2254 Pet. 29.)

44.) Merrick found multiple dogs on the property. (*Id.* at 60.) Some of the dog pens had floors made of metal grating which "was packed up with feces and urine." (*Id.* at 61.) There was no visible potable water near the dogs. (*Id.* at 60, 62, 64, 65, 67, 77, 80.) Merrick testified regarding the health conditions of the dogs. One dog, for example, had visible scarring, injuries, and hair loss. (*Id.* at 62.) Another was very malnourished with open sores. (*Id.* at 77.) At the time of the investigation, the temperature was close to freezing, and the dogs did not have any blankets. (*Id.* at 63.) The Court of Appeals of Virginia accurately recounted the testimony of Drs. Jerry Bayer and Alice Ulrichs. (*See* Jan. 10, 2007 Tr. 190–236; Jan. 11, 2007 Tr. 20–71.)

Miller, however, argues that the dogs that were euthanized contracted Parvo[6] while in the custody of the Commonwealth during the week before the veterinarian examined the dogs. (§ 2254 Pet. 65.)

Viewing the evidence in the light most favorable to the Commonwealth, *Jackson*, 443 U.S. at 319, this Court finds that a reasonable trier of fact could conclude that the dog had Parvo before arriving in the Commonwealth's custody. Parvo is a treatable, preventable disease that is prevalent in pit bull dogs. (Jan. 10, 2007 Tr. 193–95.) One dog, which Dr. Bayer diagnosed with Parvo, had bloody diarrhea. (*Id.* at 193.) On a scale from one to ten, Dr. Bayer gave the dog a general body condition score of negative three. (*Id.* at 196.) A "one" on that scale means that the dog "is just basically a skeleton with very little muscle left." (*Id.* at 196–97.) Such a dog "has digested it[]s own body."

---

[6] Parvo "is a gastrointestinal problem in dogs." (Jan. 11, 2007 Tr. 193.)

(*Id.*) The dog's heart rate was abnormally slow, and the skin was in bad shape. (*Id.* at 199.) The dog exhibited signs of immune problems causing blood clotting. (*Id.* at 200.) Another dog exhibited similar symptoms due to malnutrition and a lack of vaccines. (*Id.* at 206.)

When asked on cross-examination whether the dogs could have contracted Parvo in the seven-day period that they were in the custody of the Commonwealth, Dr. Bayer stated, "I would have expected 14 days incubation period." (*Id.* at 210.) Specifically, Dr. Bayer explained that the dogs "were at the later stages of Parvo" and that the dogs "were infected 14 days prior to getting sick." (*Id.* at 222–23.)

Based on the evidence presented at trial, this Court finds the Court of Appeals of Virginia's holding was not based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Miller guilty of animal cruelty beyond a reasonable doubt. Indeed, a reasonable trier of fact could easily have found that Miller's dogs were deprived of necessary drinking water, and that Miller wilfully inflicted inhumane injury which resulted in the dogs' death or euthanasia, in violation of Virginia Code Section 3.1-796.122(A) and (H) (West 2006).

Regarding the charge of dog fighting, Merrick investigated and discovered "flirt poles" (Jan. 9, 2007 Tr. 49), a spring pole, a bite stick, a treadmill (*id.* at 56), several syringes, and a skin stapler (*id.* at 71). Mark Kumpf, the director of the Montgomery County Animal Resource Center and a dog fighting expert, testified at Miller's trial. (Jan.

15

10, 2007 Tr. 62, 73.) Kumpf identified the wounds and scarring on dogs as those

consistent with injuries sustained during dog fights. (Id. at 85–89.) Kumph identified

items seized from Miller's house as dietary supplements used to increase the body mass

and nutrition of animals and humans, as well as steroids. (*Id.* at 92–94, 97.) Kumph

identified a book seized from Miller as a comprehensive guide to training dogs for

fighting. (*See, e.g., id.* at 94–96, 107–10.) Kumph recognized other seized items used

predominantly to treat wounds and shock. (*Id.* at 101–06.)

Based on the evidence presented at trial, this Court concludes that the Court of

Appeals of Virginia's holding was not based on an unreasonable determination of the

facts. 28 U.S.C. § 2254(d). Viewing the evidence in the light most favorable to the

prosecution, a rational trier of fact could have found Miller guilty of dog fighting beyond

a reasonable doubt. The characterization of the dogs' wounds, coupled with the

possession of items used almost exclusively in the business of dog fighting, supports a

finding that Miller "possess[ed], own[ed], [or] train[ed]. . . [a] dog with the intent that

such dog engage in an exhibition of fighting with another dog." Va. Code Ann. § 3.1-

796.124(A)(4) (West 2006). Accordingly, Claim 6 will be dismissed.

### 2. Ineffective Assistance of Counsel

To prove a constitutional claim for ineffective assistance of counsel, a petitioner

must demonstrate that counsel's representation was deficient and that actual prejudice

stemmed from the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Proving deficient representation "requires showing that counsel made errors so serious

that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* That is, a petitioner must show that counsel's performance at trial "'fell below an objective standard of reasonableness' based on the situation at the time rather than on hindsight." *Buckner v. Polk*, 453 F.3d 195, 201 (4th Cir. 2006) (quoting *Strickland*, 466 U.S. at 688–90)). Proving prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. Put differently, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

a. **Claims 1(a) and 1(b): Ineffective Assistance for Failure to Call Witnesses**

In Claim 1(a), Miller complains that he received ineffective assistance of counsel because his trial attorney did not call the police officers who arrested Miller for obstruction of justice as witnesses at the suppression hearing. Miller raised this issue in his habeas petition filed in the Supreme Court of Virginia. The Supreme Court of Virginia determined that Miller did not satisfy the two-part test enunciated in *Strickland*, and dismissed the claim. The court reasoned:

> [Miller] has failed to identify which officers he contends counsel should have called, and failed to provide affidavits to verify that the officers would have testified as [Miller] contends. Thus, [Miller] has failed to demonstrate that

counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

*Miller v. Dir., Dep't of Corr.*, No. 100343, at 2 (Va. July 19, 2010).

In Claim 1(b), Miller argues that his attorney rendered ineffective assistance for failing to call an expert witness on dog fighting. Miller raised this issue before the Supreme Court of Virginia. The Supreme Court of Virginia dismissed the claim, reasoning that:

> [Miller] has failed to identify the expert he contends trial counsel should have called to testify, and has failed to provide an affidavit to verify that the expert would have testified as he contends. Furthermore, the record, including the affidavit of counsel, demonstrates that trial counsel, who was retained, discussed with [Miller] the need for expert assistance and that [Miller], who was not indigent, refused to supply the needed funds. Thus, [Miller] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*Id.* at 2–3.

Regarding Claim 1(a), Miller did not identify in his state habeas petition which police officers his attorney should have called, nor did Miller proffer what testimony would have been elicited. Miller only asserted that "[u]nder the right of confrontation, [Miller's] counsel should have called the police officers to testify to the events in question." (Br. Supp. Mot. Dismiss Ex. 6, at 5.) Miller contended that "[t]he Richmond Police Officers['] arrest report and testimony of the events would have been adverse toward Officer Merrick's sequence of events" and that "[h]ad counsel called the police

officers and submitted the arrest report, it would have refuted Officer Merrick's testimony." (*Id.* at 5, 6.)

As to Claim 1(b), Miller's state habeas petition did not identify which expert witness his attorney should have called, nor did Miller proffer specific testimony that would have been elicited. Rather, Miller simply asserted that "[c]ounsel was ineffective for failure to call it's [sic] own expert to refute Mr. Kumpfs' [sic] prejudicial testimony," and"[c]ounsel was ineffective for his failure to call expert witness pursuant to refuting Dr. Ulrich, a second veterinarian that examined and testified that each dog's scars were consistent with dog bite wounds." (*Id.* at 8.) Miller contended that "[h]ad counsel called his own expert in veterinary medicine, the result would have been different." (*Id.* at 9.) Miller insisted that a defense expert witness could have explained "that it was impossible to determine that [Miller] was the cause of Parvo." (*Id.* at 10.) This allegation is not "a specific, affirmative showing of what the missing . . . testimony would have been." *Miller v. Johnson*, No. 7:06-cv-00611, 2007 WL 1725617, at *23 (W.D. Va. June 12, 2007) (citing *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994)); *see also Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001) ("'Where the only evidence of a missing witnesses' [sic] testimony is from the defendant, this Court views claims of ineffective assistance with great caution.'" (quoting *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986))).

Absent a specific proffer as to what favorable evidence or information would have been produced had counsel performed adequately, Miller's claim of ineffective assistance

19

of counsel does not provide a basis for habeas relief. *Cf. Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[An allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced.")(citing *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990)).

Miller's refusal to pay for an expert witness (Br. Supp. Mot. Dismiss Ex. 7, at 2) likewise bars his claim of ineffective assistance for calling an expert witness to the stand. *Del Toro v. Quarterman*, 498 F.3d 486, 491 (5th Cir. 2007) ("If . . . a client instructs his attorney not to hire an investigator or contact and interview witnesses, the client cannot later claim that the failure to do these things amounted to ineffective assistance."). The Supreme Court of Virginia's holdings in Claims 1(a) and 1(b) are not based on an unreasonable application of federal law, or an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

Miller makes some effort in the instant petition to cure the deficiencies of Claim 1(a) noted by the Court of Appeals of Virginia. Specifically, although Miller asserts that he "has not been afforded the opportunity to hear what the officer's testimony would have been," he avers that "[h]ad the police officers testified, they would have help[ed] to preserve [Miller's] Fourth Amendment Right by testifying" in Miller's favor. (§ 2254 Pet. 6.) Miller offers various topics about which the police officers could have been questioned. For example, Miller speculates that the police officers could have commented on the fact that "[o]fficers were not aware of Merrick[']s presence during search and seizure" and that Miller "never attempted to arm himself." (*Id.* at 6–7.)

20

Even considering these additional allegations, however, Miller fails to show that his attorney rendered deficient performance. To the contrary, the record indicates that Miller's state-court attorney spoke with the Richmond police officers "and their testimony would only have corroborated Officer Merrick's testimony." (Br. Supp. Mot. Dismiss Ex. 9, at 1.) Miller's unfounded speculation regarding the possibility of favorable testimony of unnamed police officers does not support a finding that Miller's attorney rendered ineffective assistance of counsel. Accordingly, Claims 1(a) and 1(b) will be dismissed.

### b. Claim 2: Ineffective Assistance for Failure to Argue Improper Execution of Search Warrant

In Claim 2, Miller asserts that he received ineffective assistance of counsel when his appellate attorney failed to argue on appeal that the search warrant was improperly executed. Specifically, Miller argues that his counsel should have appealed the Circuit Court's denial of Miller's motion to suppress.

The Supreme Court of Virginia rejected this claim during Miller's state habeas proceedings, explaining that:

> In [this claim, Miller] alleges he was denied the effective assistance of counsel because appellate counsel failed to raise on appeal the "novel issue" that the trial court erred in denying [Miller's] motion to suppress because the search of the property was after sunset in violation of Code § 3.1-796.113.[7]

---

[7] Virginia Code § 3.1-796.113, now codified at § 3.2-6585 of the Virginia Code, provided:

When a sworn complaint is made to any proper authority by any animal control officer, humane investigator, law-enforcement officer or State Veterinarian's representative that the complainant believes and has reasonable cause to believe that the laws in relation to cruelty to animals have been, are being, or are about to be

The Court holds that [this claim] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). [Miller] concedes there is no authority supporting his "novel issue" and appellate counsel is not ineffective for failing to raise frivolous claims on appeal. Thus, [Miller] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*Miller*, No. 100343, at 3–4 (footnote added).

The Supreme Court of Virginia's determination was not an unreasonable application of federal law, nor was it an unreasonable determination of the facts. Appellate counsel is accorded "the 'presumption that he decided which issues were most likely to afford relief on appeal.'" *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)); *see also id.* at 164 (emphasizing "the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review"). It is not unreasonable for appellate counsel to decline to pursue an issue on appeal when there is no authority supporting such issue, and the Circuit Court in this case concluded that the police had

---

violated in any particular building or place, such authority, if satisfied that there is reasonable cause for such belief, shall issue a warrant authorizing any sheriff, deputy sheriff or police officer, to search the building or place. No search shall be made after sunset unless specially authorized by the authority upon satisfactory cause shown.

Va. Code Ann. § 3.1-796.113 (West 2006). The Circuit Court concluded that the magistrate had provided such authorization but simply omitted noting it on the face of the warrant. (Sept. 12, 2006 Hr'g Tr. 4.)

complied with Virginia Code Section 3.7-796.113. Accordingly, Claim 2 will be dismissed.[8]

### 3.    Claim 4(a):  Fourth Amendment Violation

In Claim 4(a), Miller complains that his Fourth Amendment rights were violated when officers entered his home to arrest him without Miller's consent. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976) (footnote omitted).[9] The Fourth Circuit has admonished that "the burden of pleading and proof is upon [the petitioner] to indicate in the petition . . . the *reasons* he has, and *the facts in support thereof*, as to why he contends he did not receive an opportunity for a full and fair litigation of his Fourth Amendment claims." *Doleman*, 579 F.2d at 1266 (emphasis in original).

---

[8] In Claim 2, Miller also asserted that his appellate attorney should have forgone three arguments on appeal which "lacked any chance for success." (§ 2254 Pet. 27.) Interestingly, Miller himself now seeks relief on those same "frivolous" (*id.* at 28) grounds in Claims 4, 5, and 6 of the instant petition.

[9] "[I]n the context of a federal habeas corpus challenge to a state court conviction, 'the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal and the substantial societal costs of the application of the rule persist with special force.'" *United States v. Scarborough*, 777 F.2d 175, 182 (4th Cir. 1985) (quoting *Stone*, 428 U.S. at 494–95). Accordingly, when a federal district court sitting in habeas considers Fourth Amendment claims, it should "first inquire as to whether or not the petitioner was afforded an *opportunity* to raise his Fourth Amendment claims under the then existing state practice." *Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978) (emphasis in original).

Miller received an opportunity for full and fair litigation of his Fourth Amendment claim in a suppression hearing prior to trial.[10] (*See generally* Sept. 12, 2006 Hr'g Tr.) Miller has failed to allege any facts indicating that he did not receive full and fair litigation of his Fourth Amendment claim in the state proceedings. Consequently, federal habeas corpus review is precluded, and Claim 4(a) will be dismissed.

### 4. Claims 5(a) and 5(b): Jury Instructions

In Claims 5(a) and 5(b), Miller argues that the trial court erred when it denied three of Miller's proposed jury instructions. In Claim 5(a), Miller insists that the jury should have received an instruction indicating that Virginia Code Section 3.1-796.68[11] is a lesser included offense of a crime of which Miller was convicted, Section 3.1-796.122.[12] In Claim 5(b), Miller asserts that the jury should have received an instruction on the definitions of terms found in Virginia Code Section 3.1-796.68.

"Normally, instructions to the jury in state trials are purely matters of state law and procedure and it is only in circumstances where the instructions impugn fundamental fairness or infringe upon specific constitutional protections that a federal question is

---

[10] Virginia Code § 19.2-266.2 outlines generally the procedures governing motions to suppress in the Commonwealth of Virginia.

[11] Section 3.1-796.68 of the Virginia Code lists the items that an animal owner must provide to each animal, including food, water, and shelter. A first violation of this section is a Class IV misdemeanor.

[12] Former Virginia Code section 3.1-796.122(A) contains the provision prohibiting cruelty to animals, punishable as a Class I misdemeanor.

presented." *Chance v. Garrison*, 537 F.2d 1212, 1215 (4th Cir. 1976) (citing *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir. 1960)).

The Court of Appeals of Virginia held that Section 3.1-796.68 is *not* a lesser-included offense of Section 3.1-796.122. (Br. Supp. Mot. Dismiss Ex. 3, at 4–5.) Accordingly, the Court of Appeals of Virginia found the instruction proposed in Claim 5(b) to be irrelevant.[13] (*Id.* at 5.) Miller "has failed to demonstrate that the state court's interpretation of the state statute violated a federally protected right." *Pendergrass v. Angelone*, No. 01-870-AM, 2002 WL 32341910, at *7 (E.D. Va. Apr. 22, 2002) (citing *Chance*, 537 F.2d at 1215). Therefore, Claims 5(a) and 5(b) will be dismissed.

## III. CONCLUSION

For the reasons stated above, Respondent's Motion to Dismiss will be granted; Miller's claims will be dismissed; the petition for writ of habeas corpus will be denied; and this action will be dismissed.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition

---

[13] Because the Supreme Court of Virginia summarily rejected Miller's petition for appeal, it is presumed that the Supreme Court of Virginia dismissed Claims 5(a) and 5(b) for the reasons stated by the Court of Appeals of Virginia. *See White v. Johnson*, No. 2:05cv365, 2006 WL 2520113, at *4 (E.D. Va. Aug. 25, 2006) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). No law or evidence suggests that Miller is entitled to further consideration in this matter. A certificate of appealability will therefore be denied.

An appropriate Final Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
United States District Judge

Date: June 10 2011
Richmond, Virginia